UNITED STATES BANKRUPTCY COURT
DISTRICT OF PUERTO RICO

IN RE:

ENRIQUE RODRIGUEZ NARVAEZ
MIRNA IRIS RIVERA ORTIZ
DEBTORS

CASE NO. 18-02044 EAG

CHAPTER 13

**REPLY TO MOTION TO DISMISS FILED BY LOPEZ ENTERPRISES, INC.**

**TO THE HONORABLE COURT:**

**COME NOW** Debtors through the undersigned attorney and respectfully request and pray for the following:

1. On April 16, 2018, Debtors, Enrique Rodríguez Narváez & Myrna I. Rivera Ortiz, filed a voluntary petition for relief pursuant chapter 11 of the Bankruptcy Code; for which the plan was confirmed on March 25, 2019.

2. On June 23, 2021, Debtors received a Motion to Dismiss filed by creditor Lopez Enterprises, Inc., alleging that payment has not been made to them and the sale has not been completed. *See, docket no. 192.*

3. As to this debt, Debtors have initiated a process of selling the lot of land in Arroyo (docket no. 182) which will produce enough to pay the debt.

4. Creditor Lopez Enterprises claims against Debtors are based on two different *in rem* judicial liens: (1) one for $85,000.00; and (2) another for $625,000.00 recorded in the Registry of Property in Guayama.

5. As per docket no. 194, this Honorable Court granted debtors until August 20, 2021 to conclude the sale of the property of Arroyo (property number 68) and with the proceeds pay the creditors as proposed under the Chapter 11 Reorganization Plan.

6. Pursuant to the above, it is patently clear that the Motion to Dismiss filed by creditor

Lopez Enterprises is premature because the August 20, 2021 deadline has not expired. Nevertheless, Debtors have been offering the sum of $148,000.00 which pay all the small debt and release the lien place by creditor in lot 11592 making is more feasible for debtors to sale this property.

7. Debtors understand that once the sale of the Arroyo's Property has been consummated, creditor Lopez Enterprise will receive their payment.

8. Moreover, since June 1, 2021 Debtors have been offering creditor Lopez Enterprises payment in the amount of $148,000.00 that would pay the entire amount of the smaller claim ($85,000.00) with interest and which would also release the liens place in one of the Debtors' properties.

9. Creditor Lopez Enterprises has not been acting in good faith in the present proceedings by refusing to accept the payment in full of the small debt which eliminate the lien of lot 11592, see **Exhibit A** for this property and after canceling its lien. Debtors have several negotiations pending which at no taking place view to the lien. The terms that Debtors have been offering to release the lien on the lot 11592, they have been presenting Debtors with severe negotiating obstacles to successfully sell his real estate assets (Arroyo and Guayama Properties).

10. In this case, Debtors have been using Echelon Investment Group to do the marketing of the Guayama Project but to the different circumstances, the project of Guayama has not been completed, must be working on the outcome on the investor to are welling and highest interest and values.

11. As evidenced in **Exhibit B** to the present Motion, Debtors efforts to sell the Guayama's Property have been delayed because the interested buyers have requested that the Guayama's Property be sold to them free and clear of all liens and encumbrances.

12. To assist Debtors with the successful sale of the two properties (Arroyo and Guayama), Debtors are requesting from this Honorable Court that order Creditor Lopez Enterprises to receive the funds as to the small debt and cancel and release of any lien over any of Debtors properties, in

particular, as to Lot #11592 (in reference to the small debt claim).

13. In the event that creditor Lopez Enterprises opposes this petition, debtors respectfully request that they be allowed to consign the funds and that the Court enter an Order cancelling the judicial lien on property 11592 and over any other property that it may have been recorded. Once this is done, Debtors have four potential buyers for four different lots which will produce enough to pay the remaining balance owed to creditor Lopez Enterprises.

14. It must be emphasized that the main reason we have not been able to resolve this case is due to the refusal of creditor Lopez Enterprises to accept the payment offered by the Debtors and release the lien over the property. If the lien is not eliminated its makes extremely difficult to obtain the segregation of the different lots and complete payment of the debt owed.

15. The demand by creditor Lopez Enterprises to simultaneously receive payment in full for both outstanding debts is unreasonable and impedes the Debtor's ability to fully satisfy the debts owed to said creditor.

16. Debtors have already resolve with all creditors and the only one pending to resolve is Lopez Enterprise and CRIM which will be pay with the proceed from the sale of the property. Who has not been able to offer any option, alternative or condition to mitigate and make more feasible the payment of their debt.

17. Debtors request to this Honorable Court that with the consignment of the sum of $148,000.00 enter an order releasing any lien over the property 11592 register at Guayama County and over any other property that may appear the small claim for the principal sum of $85,000.00 may have been recorded, It is important this request since it release the judicial lien over the property and makes more feasible the sale of the property.

**WHEREFORE,** Debtors request from this Honorable Court to provide the following relief: (a) at the motion to dismiss filed by creditor be denied; (b) enter an order to Lopez Enterprises to accept the payment of $148,000.00 in full satisfaction of the small debt and releasing the lien on

property 11592 registered at Guayama County; and, (c) its be allowed to August 20, 2021 to completed the sale of the property of Arroyo, along with any other procedure that in accordance to law this Honorable Court deems just and proper.

**I HEREBY CERTIFY** that on this same date a copy of this motion has been electronically filed with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the participants: U.S. Trustee, to Luis R. Vivas Ugartemendía, Esq. attorney for Movant, and to other parties in interest as per the Master Address List.

In Caguas, Puerto Rico, this 7th day of July 2021.

**VICTOR GRATACOS DIAZ LAW OFFICE**
PO BOX 7571
CAGUAS, PR 00726
PHONE: (787) 746-4772 & FAX: (787) 746-3633
EMAIL: bankruptcy@gratacoslaw.com


/s/ Víctor Gratacós-Díaz (127906)

# Estudio de Título

**FINCA:** 68     **SOLICITA:** *ENRIQUE RODRIGUEZ NARVAEZ*
**FOLIO:** 41     **CASO:**
**TOMO:** 197- ARROYO
**INSCRIPCION 37ma.**
**REGISTRO:** GUAYAMA

### Descripción:

RUSTICA: Finca compuesta de 63 cuerdas de terreno, equivalentes a 24 hectáreas, 76 áreas y 15 centiáreas, radicada en el barrio Cuatro Calles, Sector Sabana Eneas del término municipal de Arroyo, Puerto Rico, colindando por el NORTE, SUR ESTE Y OESTE, con terrenos de Luce and Company, Sociedad en Comandita.

Dicha finca forma parte de otra con 11 cuerdas inscrita al folio 128 del tomo 7 de Arroyo, finca #345.

### TITULAR:

*Consta inscrita a favor de los esposos ENRIQUE RODRIGUEZ NARVAEZ y MYRNA IRIS RIVERA ORTIZ, quienes adquieren por compra esta finca y otra a John A. Zerbe, Junior, en capacidad de Sindico de Quiebras Bankruptcy Trustee, representando a Rafael Alberto Delannoy Rodriguez y Maria Cristina Colon de Jesus, precio de $760,000.00, correspondiendo a esta finca la suma de $595,000.00, según la escritura #614 otorgada en San Juan, el 6 de julio del 2006 ante el notario Enrique N. Vela Colon, inscrita al folio 41 del tomo 197 de Arroyo, inscripcion 37ma. A 5 de noviembre del 2009 668/627*

### CARGAS:

**POR SU PROCEDENCIA: libre**

*POR SI:* a anotación "C"- Orden de Prohibición de enajenar. En el Tribunal de Primera Instancia, sala de Guayama, caso GCD-2009-0153, sobre Cobro de

*Dinero, Incumplimiento de Contrato, Daños y Perjuicios, Enriquecimiento Injusto, seguido por V.C.I.Construction Inc. demandante, vs. Enrique Rodriguez Narvaez, Myrna Iris Rivera Ortiz, y la sociedad legal de gananciales por ambos compuesta, Jane Doe, John Doe, demandado, se presento orden y mandamiento de fecha 10 de agosto del 2009 autorizando el embargo de esta finca para responder por la suma de $812,500.00. se reclama la titularidad de las mismas y/o el cobro de varias sumas según pactadas en acuerdo, a saber, $812,500.00 por concepto del dinero dado en préstamo, balance al 30 de junio del 2009, al 30 de junio del 2009, el cual aumenta hasta su saldo total, $100,000.00 por concepto de penalidades según contrato, $50,000.00 por los daños económicos, $86,425.27 por concepto de certificaciones en virtud de otros acuerdos, balance al 30 de junio del 2009, el cual incrementa hasta que se salde. En la alternativa, se solicitó en la demanda el traspaso de la titularidad de las fincas a favor de una corporación "X", por el mismo valor que fue adquirido, $760,000.00. Además se reclaman $20,000.00 por concepto de honorarios de abogado. Archivado bajo los legajos #198 del 2009. Presentada el 19 de agosto del 2009 al asiento 1228-640 e inscrita al folio 41 del tomo 197 de Arroyo, el 25 de mayo del 2010.*

REVISADOS: *REGISTRO EMBARGOS ESTATALES; SENTENCIAS, CONTRIBUCIONES FEDERALES, LEY #12, REGISTROS DEL CRIM, BITACORA ELECTRONICA, SISTEMA AGORA Y SISTEMA KARIBE.*

*Aparece anotado en el libro de Sentencias #9 folio 1 orden #2 Miguel A. Vázquez Reyes, Et.Als. demandantes contra Enrique Rodriguez Narvaez, Et.Als. para responder por $92,200.00 presentado el 8 de julio del 2015 sentencia de fecha 27 de marzo del 2013 ene l caso GCD-2008-0229 del Tribunal de Primera Instancia, sala de Guayama, sobre cobro de dinero y daños. Anotada el 8 de septiembre del 2015*

A 29 de septiembre del 2020

*"ADVERTENCIA": Las Secciones del Registro de la Propiedad están computadorizadas por el nuevo sistema identificado como Karibe, mediante el cual se digitalizaron los tomos históricos que contienen los datos relacionados con las fincas inscritas y con los documentos presentados y pendientes de inscripción. Desde el 25 de abril de 2016, el Departamento de Justicia descontinuó los sistemas Toolkit y Ágora utilizados anteriormente en la*

*preparación de los estudios de títulos y otros documentos. Adicional a esto, los embargos federales y estatales, ahora son entrados y provistos directamente por la Oficina Central del Registro de la Propiedad en el Departamento de Justicia sin poder corroborarlos en los libros de control. No somos responsables por errores que puedan resultar en este estudio debido a los errores y/u omisiones del Registro y/o sus empleados, al depositar los datos en esta bitácora.*

*Maribet Ramos Vazquez  787-313-1910 787-864-1890  Apartado 975, GUAYAMA, PR 00785*
*email: maribetramos@gmail.com*



*Investigadora de Título de Propiedad*




ECHELON INVESTMENT

**Echelon Investments**
P.O. Box 2258
Hobe Sound, FL 33475
(561) 305-4092

July 5, 2021

Attorney Victor Gratacos
P.O. Box 7571
Caguas, PR 00726

Via Email: vgratacoslaw@gmail.com

Dear Mr. Gratacos:

As per your request we are submitting a brief summary pertaining to the efforts made by Mr. Enrique Rodriguez and the undersigned for the procurement of Buyers and/or Investors for the Guayama Project comprised of three parcels of land in Guayama, Puerto Rico and encompassing the following developments within same: Affordable Housing (423 units), Hotel, Walk-up Apartments and Custom Luxury Homes (hereinafter the "Guayama Project").

**Guayama Project Pros and Cons.**

The Guayama Project is not the traditional affordable housing project that is customarily designed in Puerto Rico. Due to its unique location on the Southern part of the Island and its proximity to the Caribbean Sea, the Guayama Project is ideal for the development of a high-end hotel resort (possibly with a gambling casino), a commercial retail strip mall, walk-up apartments with ocean view, and luxury beachfront homes on the eastern end of the Project. The competitive advantage of the Project is precisely because it features a high-end beach style living blended with an affordable housing component that will provide housing for many of the development's employees (hotel, construction, maintenance, retail stores, etc.).

However, because of these hybrid developments under the umbrella of a single project that envisions a community living lifestyle that especially different for Puerto Rico, it requires a very unique and different type of investment group. It is a challenging task to identify potential buyers/investors that share the same vision that the Project is ideal for development.

In this case we have had a time period of over one year to sell the Project (from March 2019 to March 2020), but we have also faced the following obstacles and adversities, namely:

- The Coronavirus Pandemic: From February 2020 until the present time, the restrictions placed by both Federal and Local Governments have:
    - Prevented travel to the Island by potential investors/buyers.
    - Closed Government agencies required for potential investors/buyers to conduct due diligence (PR Housing Department, CRIM, Registry of Property, OGPe, PR Treasury Department, Municipality of Guayama, etc.).

1

Doc ID: 87e96f94adc54ce7bf86432d5cda0fba45754685


ECHELON INVESTMENT

- o Business closures such as architectural and engineering firms, attorneys, accountants, construction companies, etc.).
- o Bank closures (essential to potential buyers/investors to seek information for construction loans).
- o Closures of legal entities that had demonstrated interest in evaluating the Guayama Project.
- o Closure of governmental agencies prevented the filing of building permits required by some potential investors/buyers).
- The Federal and Puerto Rico General Elections during November 2020. The uncertainty of the US Presidential elections caused a degree of uncertainty and investor/buyer confidence in making real estate investments. In Puerto Rico, although the same political party managed to retain power, the election of a new Governor caused the uncertainty of the designation of new local agency directors.
- The earthquakes that affected the southwestern part of the Island also caused some concern to potential investors/buyers due to the Project's proximity to the epicenters.

Considering the foregoing, and notwithstanding these factors that have caused delays and obstacles in the pursuit of finding a qualified buyer/investor for the Guayama Project, the undersigned as well as the Project Owner (Debtor Enrique Rodriguez) have not stopped or curtailed attempts to sell the Project. To this effect, below we express the efforts expended in such attempt focusing on the time period between January 2020 to present.

**Timeline of Presentations, Negotiations and Results.**

Negotiations for the sale of the Guayama Project commenced before 2018, but for purposes of this report we shall focus on the history of the transactions from 2020 that are relevant to the Bankruptcy proceedings.

Since the filing of the 2018 Chapter 11 Petition in the U.S. Bankruptcy Court, the following potential buyers and/or investors for the Guayama Project have engaged in negotiations with Debtor Enrique Rodriguez Narvaez:

1. January 2020. We were negotiating the sale of the Guayama Project with several different potential buyers/investors that demonstrated interest in acquiring the Guayama Project. These different groups are herein identified:

    a. JERRID DOUGLAS AND FRED BROWN (New York New York).

    b. MARIA FENEQUE (New York, New York) AND JEFF LUBIN (Los Angeles, California).

    c. Mark Iden (Houston, Texas) and Mark Reginelli (Philadelphia, Pennsylvania).

    d. TILMAN FERTITTA (Houston, Texas).

Doc ID: 87e96f94adc54ce7bf86432d5cda0fba45754685

ECHELON INVESTMENT

None of these groups provided the initial deposits requested nor pursued the acquisition of the Guayama Project (in different degrees) due to the factors specified above (ie. Pandemic, earthquakes, political uncertainty, etc.).

2. February 2020. Due to the fact that buyer/investor interest waned as expressed above, and in order to receive as much cash as possible for the fulfilment of financial obligations with the creditors in the Bankruptcy case, Mr. Enrique Rodriguez reduced the sales Price of the Guayama Project to $7 Million notwithstanding that the value of the assets surpassed said amount.

3. From May 2020 to October 2020. New potential buyers/investors came to the table of negotiations to discuss the acquisition of the Guayama Project. Many of these investors wished to buy the Project in smaller parts, and all of them requested a due diligence period that went past the date of the Puerto Rico General Elections held in November 2020. The following groups that actively engaged in serious negotiations with Mr. and Mrs. Rodriguez during this time period are listed below:

   a. WATSON WORLDWIDE CAPITAL (Houston, Texas): Company claimed to have an extremely high level of interest in acquiring Guayama Project due to it having an affordable housing component and located in Puerto Rico with potential access to Federal CDBG-Disaster Relief funds.

   RESULT: After numerous conversations and exchange of information, the Company failed to make a deposit with Mr. Rodriguez and did not provide any proof of funds.

   b. HORTON CAPITAL GROUP represented by Terry Horton and David Oberle (Dallas-Fort Worth, Texas): This affiliated company of publicly-traded company D.R. Horton Group (the largest homebuilder in the United States), engaged Mr. Rodriguez in negotiations to acquire the Guayama Project and build its signature homes on same. Due diligence efforts on their part included the procurement of letters from Municipality of Guayama relative to availability of housing vouchers for Puerto Rico homeowners.

   RESULT: After many negotiation attempts, the Horton Group declined to pursue the Guayama Project based on their reluctance to make investments in Puerto Rico (due to the Island's distance from their headquarters and their low level of familiarity with building and permitting processes in Puerto Rico).

   c. ACRUVA, a wholly owned-subsidiary of ACRUVA COMMUNITY DEVELOPERS (Deerfield Beach, Florida). Alex Donato of ACRUVA evaluated the Guayama Project information and delegated due diligence efforts to Luis Diaz that included physical inspection and further financial feasibility evaluation.

   RESULT: After conferring with principals of ACRUVA they determined the Guayama Project site was a bit too large for the scope of projects that the Company was seeking to develop in Puerto Rico.

Doc ID: 87e96f94adc54ce7bf86432d5cda0fba45754685



ECHELON INVESTMENT

4. October 14, 2020. Mr. Enrique Rodriguez decided to divide the Guayama Project into four different sub-projects that could be sold independently to different buyers:
    a. Vistas del Mar Caribe – comprised of 58 "cuerdas" dedicated for construction of 423 affordable housing units. Total price: $4 Million.
    b. Paseos del Mar Caribe – comprised of 82.6 cuerdas of ocean view and beachfront land for construction of hotel, walk-up apartments, and custom housing development lots. Total Price: $6 Million.
    c. Beach front lots - $1 MM
    d. Strip Mall - $1 MM

This strategy was implemented in order to secure funds from the initial deposit of $4 Million from different potential buyers and hence allow Mr. Rodriguez to fulfill the financial obligations to all of his creditors in the Bankruptcy Court and subsequently be able to exit the Chapter 11 Bankruptcy. The reasoning behind this strategy was that it would be easier to procure smaller investors that could limit their developments into smaller projects and in conjunction be able to provide the necessary deposits to aggregately cover the required funds to pay the creditors.

5. From January 2021 through Present. Due to the new effective strategies implemented by Mr. Rodriguez, we have been receiving different and multiple interested parties (new investors) that are willing to invest and acquire the different options that have been offered by Mr. Rodriguez and his wife. All of these new investors are requesting a due diligence period, but we have notified them that a due diligence period must be conducted in an expedited manner and that it is essential that an initial deposit be made in order to provide for the payment of debt in the Bankruptcy Court.

During this period the following parties were engaged in negotiations for the purchase of the Guayama Project:
    a. TRUCHAMP, LLC (James Sampson) and BOND CONTAINER (Shari Bond). After due diligence and travel to Puerto Rico, group could not raise the initial deposit amount to be paid to be able to pay the debts owed by Mr. and Mrs. Rodriguez in Bankruptcy Court and after exploring the potential acquisition of the Project via CDBG-DR Funds or FEMA funds, the group realized that the Project was beyond their financial scope.

    b. ASLAN VENTURES (Louisville, Kentucky) represented by its Owner and President Gregory Evans (Jacksonville, Florida). Became interested in Guayama Project via the Project's architect Juan Gomez. Mr. Evans met with Seller Enrique Rodriguez, public officials, visited the Property and was ready to execute an agreement for the purchase of the land and a joint venture for the development of the Project. Unfortunately, On March 21, 2021, Mr. Evans passed away.

    c. PAUL EMILE DESROSIERS (Fort Lauderdale, Florida). As a private investor, developer and representing other investment groups associated with him, Mr. Desrosiers commenced due diligence efforts for the procurement of the Guayama Project. During due diligence

4

ECHELON INVESTMENT

and exchange of information between the parties, there was reluctance from the interested party to become engaged with the Bankruptcy proceedings.

d. May 11, 2021. STEVEN BROOKS (Los Angeles, California). Mr. Brooks represented various groups of investors including a strong development group from Los Angeles that was interested in affordable housing projects. Mr. Brooks was also engaging three different hotel developers for integration to the Guayama Project, as well as another group for development of assisted living facilities in Puerto Rico. Due diligence was conducted via exchange of documents and information. Currently awaiting to hear from Mr. Brooks' partners as to decision to proceed with the acquisition of the Project.

e. June 1, 2021. LEON WINER PROPERTIES (San Juan, Puerto Rico). Leon Winer commenced due diligence efforts after expressing interest in acquisition of Project. CURRENTLY the LEON WINER GROUP is evaluating the feasibility of this Project.

In summary, given the fact that given the fact that the Government of the United States in collaboration with the Department of Housing of Puerto Rico has recently agreed upon a strategy for the release of the CDBG-DR (Community Development Block Grant – Disaster Relief) funds, there has been renewed interest in the purchase and acquisition of the Guayama Project by various additional groups of buyers/investors.

Once the potential buyers demonstrate their genuine interest in the purchase of the Guayama Project and the source of funds to acquire the Project has been verified, we shall notify you (as the attorney for Mr. Rodriguez) accordingly with the details in order to prepare the Motion to Make Sale. We are very close to receiving various formal offers, and once received, if accompanied with initial deposit amounts, Mr. Rodriguez should have sufficient cash to be able to complete payment of debts owed in the Bankruptcy Case.

The above is stated without taking into consideration the detail of the Property of Arroyo, Puerto Rico which indeed, if completed by August 21, 2021, shall provide enough funds to pay off creditor Lopez Enterprises, Inc.

The above represents and reflects a brief description of the timeline and most salient negotiation attempts made to sell the Guayama Property by Owner Enrique Rodriguez and is submitted to Mr. Victor Gratacos with the understanding that this Summary will be filed in the United States Bankruptcy Court in Puerto Rico. All of the above is submitted with the assurance that the information is accurate to the best personal knowledge of the signatories, except for that information that has been provided to the signatories who believe same to be true and accurate to their best knowledge and belief.

Signed this 5th day of July of 2021 by Business Consultants for Mr. Enrique Rodriguez and his wife, Myrna Rodriguez:

_____         *Lorenzo Vilanova*
Charles Eckardt                                                                  Lorenzo Vilanova

Doc ID: 87e96f94adc54ce7bf86432d5cda0fba45754685

# HELLOSIGN

# Audit Trail

| | |
|---|---|
| **TITLE** | Letter dated July 5, 2021 to Victor Gratacos |
| **FILE NAME** | July 5 2021 _ EXH...ON TO DISMISS.pdf |
| **DOCUMENT ID** | 87e96f94adc54ce7bf86432d5cda0fba45754685 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

## Document History

**SENT** — 07 / 07 / 2021 18:31:14 UTC
Sent for signature to Lorenzo Vilanova (lvasiete@yahoo.com) and Charles Eckardt (kelcomcomm@yahoo.com) from kelcomcomm@yahoo.com
IP: 5.188.123.242

**VIEWED** — 07 / 07 / 2021 18:31:39 UTC
Viewed by Charles Eckardt (kelcomcomm@yahoo.com)
IP: 5.188.123.242

**VIEWED** — 07 / 07 / 2021 18:31:52 UTC
Viewed by Lorenzo Vilanova (lvasiete@yahoo.com)
IP: 198.245.107.253

**SIGNED** — 07 / 07 / 2021 18:31:59 UTC
Signed by Charles Eckardt (kelcomcomm@yahoo.com)
IP: 5.188.123.242

**SIGNED** — 07 / 07 / 2021 18:32:11 UTC
Signed by Lorenzo Vilanova (lvasiete@yahoo.com)
IP: 198.245.107.253

**COMPLETED** — 07 / 07 / 2021 18:32:11 UTC
The document has been completed.

Powered by HELLOSIGN